UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BYRON K. BROWN,

                                        Plaintiff,

                                                            **OPINION & ORDER**

        - against -
                                                            No. 23-CV-6056 (CS)

ANTHONY ANNUCCI, BERMAN JOSEPH, and
PATRICIA CHUMNEY,

                                        Defendants.
-------------------------------------------------------------x

        This Order relates to the above-captioned case and to:

        *Brooks v. Annucci, et al.*, No. 23-CV-6902

        *Campbell v. Annucci, et al.*, No. 23-CV-6900

        *DeJesus v. Annucci, et al.*, No. 23-CV-6905

        *Haymon v. Annucci, et al.*, No. 23-CV-6922

        *Howard v. Annucci, et al.*, No. 23-CV-6923

        *Lind v. Annucci, et al.*, No. 23-CV-6903

        *Louime v. Annucci, et al.*, No. 23-CV-6898

        *Martinez v. Annucci, et al.*, No. 23-CV-6909

        *Pek v. Annucci, et al.*, No. 23-CV-6914

        *Price v. Annucci, et al.*, No. 23-CV-6925

        *Ramos v. Annucci, et al.*, No. 23-CV-6916

        *Reed v. Annucci, et al.*, No. 23-CV-6918

        *Roque v. Annucci, et al.*, No. 23-CV-6906

        *Scott v. Annucci, et al.*, No. 23-CV-6911

        *Seabrooks v. Annucci, et al.*, No. 23-CV-6919

*Williams v. Annucci, et al.*, No. 23-CV-6904

*Wright v. Annucci, et al.*, No. 23-CV-6910.

Appearances:

Shantee Brooks
Byron K. Brown
Hector L. DeJesus
Alen Haymon
Alfonso A. Howard
David Louime
Alex Martinez
Ivan T. Ramos
Dwayne Reed
Apolinar Roque
Ivan Seabrooks
Deshard Wright
Ossining, New York
*Pro Se Plaintiffs*

Eric Pek
Attica, New York
*Pro Se Plaintiff*

Jeb Harben
Assistant Attorney General
New York, New York
*Counsel for Defendants*

Seibel, J.

Before the Court is the motion to dismiss of Defendants Anthony Annucci, Bermann

Joseph, Patricia Chumney, Donald Jackson, and Lyle Carrington ("Defendants") in this and

seventeen related cases.[1]  (*Brown* Dkt. No. 53.)  For the following reasons, the motion is

GRANTED.

_____

[1] I will refer to documents found on the docket of *Brown v. Annucci*, No. 23-CV-6056, the lead case, as "*Brown* Dkt. No." and use the same convention for documents found on dockets of the related cases.  Annucci, Joseph and Chumney are named as defendants in all of the related cases except the following, which name Annucci, Jackson and Carrington as defendants: *Brooks*

## I.    <u>BACKGROUND</u>

Plaintiffs are practicing Muslims who were at all relevant times inmates at Sing Sing

Correctional Facility ("Sing Sing").  Plaintiffs Brown, Martinez, Howard, Pek, Ramos, Louime,

Lind, Williams, Campbell, Price, and Scott (collectively, the "HBA Plaintiffs") were housed in

Housing Block A during the events at issue.  They assert claims against former New York State

Department of Corrections and Community Supervision ("DOCCS") Commissioner Anthony

Annucci in his official capacity, and Sing Sing Correctional Sergeant Bermann Joseph and Sing

Sing Correctional Officer Patricia Chumney in their individual capacities.  Plaintiffs Roque,

Brooks, Seabrooks, Haymon, Reed, Wright, and DeJesus (collectively, the "HB7 Plaintiffs" and,

together with the HBA Plaintiffs, "Plaintiffs") were housed in Housing Block 7 during the events

at issue.  They assert claims against Annucci in his official capacity, and Correctional Sergeant

Lyle Carrington (whom Plaintiffs mistakenly refer to as "Kyle") and Correctional Officer Donald

Jackson in their individual capacities.  For the sake of efficiency, I will summarize the facts

common to the HBA Plaintiffs with reference to Brown's operative complaint, (*Brown* Dkt. No.

28 ("*Brown* SAC")), and the facts common to the HB7 Plaintiffs with reference to Roque's

operative complaint, (*Roque* Dkt. No. 26 ("*Roque* TAC")).[2]  Because Plaintiffs are *pro se*, I will

also consider factual allegations in Plaintiffs' motion papers, including attachments.  *See Genco*

*v. Starpoint Cent. Sch. Dist. Bd. of Educ.*, No. 17-CV-1168, 2018 WL 3827740, at *1 (W.D.N.Y.

---

*v. Annucci, et al.*, No. 23-CV-6902; *DeJesus v. Annucci, et al.*, No. 23-CV-6905; *Haymon v. Annucci, et al.*, No. 23-CV-6922; *Reed v. Annucci, et al.*, No. 23-CV-6918; *Roque v. Annucci, et al.*, No. 23-CV-6906; *Seabrooks v. Annucci, et al.*, No. 23-CV-6919; *Wright v. Annucci, et al.*, No. 23-CV-6910.

[2] I will refer to documents found on the *Roque* docket using the page numbers generated by the Court's Electronic Case Filing ("ECF") System.

June 4, 2018), *report and recommendation adopted,* 2018 WL 3819502 (W.D.N.Y. Aug. 10, 2018).[3]

### A.  <u>Facts</u>

On March 17, 2023, the HB7 Plaintiffs were denied the opportunity to attend Jumah, a weekly Muslim prayer service, due to an "administration special event." (*Roque* TAC at 2.)  The same day, they spoke with Sing Sing Muslim Chaplain, Imam Young, about the denial.  (*Id.*)  The HB7 Plaintiffs allege that Imam Young spoke with "someone in personnel" about the missed service, who stated that "corrective measures would be implemented" to ensure that it would not happen again.  (*Id.*)  Based on these assurances, the HB7 Plaintiffs did not grieve the issue.  (*Id.*)

On April 13, 2023, non-defendant Captain Courtney Nixon emailed the "executive team" and facility supervisors, including Defendants Joseph and Carrington, to inform them that Sing Sing would run on a holiday schedule the next day to allow prison staff to attend the memorial of a former colleague.  (*Id.* at 3; HB7 Opp. at 25.)  In the email, Nixon informed the staff that chapel would "operate normally."  (HB7 Opp. at 25.)  Nevertheless, on April 14, 2023, both the HB7 and HBA Plaintiffs were denied the opportunity to attend Jumah.

The HB7 Plaintiffs allege that on that morning, Defendant Jackson told them that the facility would operate on a holiday schedule, but that chapel would still run.  (*Roque* TAC at 2.)  Despite requesting to attend Jumah during the morning rounds, however, the HB7 Plaintiffs were not given the opportunity to attend the service.  (*Id.* at 2-3.)  Similarly, the HBA Plaintiffs requested to attend Jumah during morning rounds.  (*Brown* SAC ¶¶ 6, 9.)  After the rounds, the

---

[3] The HBA and HB7 Plaintiffs submitted versions of two opposition briefs based on housing unit.  For the sake of simplicity, I will refer only to Brown's opposition brief, (*Brown* Dkt. No. 60 ("HBA Opp.")), which addresses the HBA Plaintiffs' arguments, and Roque's opposition brief, (*Roque* Dkt. No. 34 ("HB7 Opp.")), which addresses the HB7 Plaintiffs' arguments.  Unreported decisions cited in this Opinion are attached.

HBA Plaintiffs heard Defendant Chumney make a radio announcement that Sing Sing would run on a holiday schedule for the day. (*Id.* ¶¶ 10-11.) Despite signing up to attend Jumah, the HBA Plaintiffs were not given the opportunity to attend the service. (*Id.* ¶¶ 14, 17-18.) At approximately 6:00 p.m., the HBA Plaintiffs went to the Sing Sing Chapel, where they learned that inmates in Housing Block 7 were also unable to attend Jumah that day. (*Id.* ¶ 16.) Plaintiffs allege that inmates in Housing Blocks B and 5 were given the opportunity to attend Jumah. (*Id.* ¶ 19; *Roque* TAC at 5.)

Plaintiffs grieved the issue. (*See, e.g.*, *Brown* SAC ¶¶ 14, 21; *Roque* TAC at 3.) They allege that, in connection with the grievance process, Defendant Joseph falsely stated in a report that he "had no knowledge of the adjusted schedule" imposed due to the memorial service. (*Roque* TAC at 3; *see Brown* SAC ¶ 23.) The Superintendent responded to the grievance, acknowledging that the grievants were denied the opportunity to attend Jumah services but stating that it was an isolated incident and that corrective measures had been implemented to ensure that it did not recur. (*Brown* Dkt. No. 15-9.)[4]

The HB7 Plaintiffs allege that they were again denied the opportunity to attend Jumah on December 29, 2023. (*Roque* TAC at 5.) They allege that non-defendant C.O. Washington "repeatedly ignored and disregarded" their inquiries regarding the status of the Jumah service, and that, despite Imam Young coming to Housing Block 7 to retrieve them, C.O. Washington

---

[4] I may consider this document because it is incorporated into the *Brown* SAC. (*Brown* SAC at 7, 8 (referencing Exhibits A-N); *Brown* Dkt. No. 15 (Amended Complaint attaching Exhibits A-N).) *See, e.g., Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) ("In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

refused to let them attend.  (*Id.* at 5-6.)  The HB7 Plaintiffs did not exhaust the grievance process

as to this denial prior to filing this action.[5]

### B.  Procedural History

On July 13, 2023, Plaintiffs jointly filed a *pro se* complaint, alleging that by not allowing

them to attend Jumah, Defendants violated their rights under the Free Exercise and Equal

Protection Clauses of the U.S. Constitution, as protected by 42 U.S.C. § 1983, and also violated

---

[5] The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  (Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.)  Exhaustion of available administrative remedies "must be complete prior to commencement of suit" and "[t]he fact that a grievance is filed, or the process is completed, subsequent to commencement of suit will not salvage an otherwise premature filing."  *Chalif v. Spitzer*, No. 05-CV-1355, 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008).

"The administrative review process requiring exhaustion is defined not by the PLRA, but by the prison grievance process itself – that is, the rules of the particular institution where the inmate is housed govern any assessment of administrative exhaustion."  *Rodriguez v. City of N.Y.*, No. 21-CV-1384, 2023 WL 2368985, at *3 (S.D.N.Y. Mar. 6, 2023).  For inmates in New York State prison, administrative exhaustion involves compliance with DOCCS' three-tiered inmate grievance program, in which (1) the prisoner must file a grievance with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged occurrence, (2) the prisoner must then appeal an adverse decision by the IGRC to the superintendent of the facility within seven days after receipt of the IGRC's response, and (3) the prisoner must then appeal an adverse decision by the superintendent to the Central Office Resolution Committee ("CORC") within seven days after receipt of the superintendent's response.  *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5; *McGee v. McGready*, No. 16-CV-4187, 2018 WL 2045094, at *2 (S.D.N.Y. Apr. 30, 2018).

Because the HB7 Plaintiffs only reached the second step of the process – appealing to the superintendent – with respect to the December 29, 2023 denial prior to filing their operative complaints, (*see, e.g., Roque* TAC at 5-6; *Haymon* Dkt. No. 29 at 5-6; *Reed* Dkt. No. 32 at 11-12), they did not exhaust the grievance process with respect to that denial, *see Baez v. Kahanowicz*, 469 F. Supp. 2d 171, 179 (S.D.N.Y. 2007) ("[A] claim must be completely exhausted *prior* to commencing suit.  It is insufficient to take only limited steps towards exhaustion before commencing the suit, or even to exhaust a claim entirely during the pendency of the case.") (emphasis in original), *aff'd,* 278 F. App'x 27 (2d Cir. 2008).

the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (*Brown* Dkt. No. 1.)  On August 7, 2023, Chief Judge Swain severed Plaintiffs' claims under Federal Rule of Civil Procedure 21 and ordered the Clerk of Court to open separate civil actions for each of the named Plaintiffs.  (*Brown* Dkt. No. 7.)  On January 17, 2024, after several Plaintiffs filed amended complaints, Defendants filed a pre-motion letter in anticipation of their omnibus motion to dismiss the complaints in each of the eighteen cases.  (*Brown* Dkt No. 38.)  On January 23, 2024, I granted Plaintiffs leave to amend to address the issues identified by Defendants in their pre-motion letter and set a schedule for the motion.  (*Brown* Dkt. No. 39.)  The HB7 Plaintiffs filed amended complaints, and the instant motion followed.

## II.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III.  <u>DISCUSSION</u>

### A.  <u>Free Exercise</u>

Defendants argue that Plaintiffs fail to state a free exercise claim because they do not allege deliberate indifference or personal involvement on the part of Defendants, and in any event they are entitled to qualified immunity.  (*See Brown* Dkt. No. 54 ("Ds' Mem.") at 12-13,

15-16.)  Because I find that Defendants are entitled to qualified immunity, I need not address

Defendants' other arguments for dismissal.

Qualified immunity shields a government official from liability for civil damages if

either (1) the "official's conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known," *Kisela v. Hughes*, 584 U.S. 100, 104

(2018) (*per curiam*) (quoting *White v. Pauly*, 580 U.S. 73, 78-79 (2017) (*per curiam*)); or (2) "it

was objectively reasonable for [the official] to believe that [his or her] actions were lawful at the

time of the challenged act," *Simpson v. City of N.Y.*, 793 F.3d 259, 268 (2d Cir. 2015).  "For a

right to be clearly established, the contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right."  *McGowan v.

United States*, 825 F.3d 118, 124 (2d Cir. 2016) (*per curiam*).  "In making this determination, we

consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged

conduct."  *Tripathy v. McKoy*, 103 F.4th 106, 116 (2d Cir. 2024) (quoting *McGowan*, 825 F.3d at

124).

Defendants argue that they are entitled to qualified immunity because reasonable officers

in their position could not have understood that missing one prayer service constituted a free

exercise violation.[6]  (Ds' Mem. at 16.)  I agree.  For thirty years, and at the time of the alleged

violation, there was an "open question" in the Second Circuit regarding whether the "substantial

burden test" – which requires plaintiffs to plead, and ultimately prove, that the disputed conduct

---

[6] Plaintiffs allege that they missed Jumah on April 14, 2023 due to an administrative event.  Although the HB7 Plaintiffs allege that they also missed services on March 17, 2023 and December 29, 2023, they did not exhaust their administrative remedies with respect to those incidents at the time of filing and, in any event, they concede in their opposition briefs that they are not pursuing a claim as to those dates and mention them only as background.  (*See* HB7 Opp. at 12.)  Accordingly, Plaintiffs base their claims only on the April 14, 2023 deprivation.

substantially burdened their sincerely held religious beliefs – applied to free exercise claims. *Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). Courts in this Circuit proceeded on the assumption that the substantial burden test applied to those claims, *see id.* at 121-22, and routinely found that missing one or a few religious services did not constitute a substantial burden, *see, e.g.*, *Hosannah v. Nassau Cnty. Crim. Supreme Ct. Sergeant Officer(s)*, No. 16-CV-161045, 2017 WL 3207966, at *14 (E.D.N.Y. July 5, 2017), *report and recommendation adopted sub nom. Hosannah v. Sposato*, 2017 WL 3207750 (E.D.N.Y. July 26, 2017); *Jean-Laurent v. Los*, No. 12-CV-132, 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 9, 2015); *Blalock v. Jacobsen*, No. 13-CV-8332, 2014 WL 5324326, at *7 (S.D.N.Y. Oct. 20, 2014); *Shapiro v. Cmty. First Servs., Inc.*, No. 11-CV-4061, 2014 WL 1276479, at *11 (E.D.N.Y. Mar. 27, 2014). Thus, at the time of the alleged deprivation, it was not clearly established that missing one religious service constituted a free exercise violation. Accordingly, Defendants did not violate a clearly established right, and it was objectively reasonable for them to believe that their conduct was lawful at the time of the alleged deprivation. *See Tripathy*, 103 F.4th at 116-17 (defendants entitled to qualified immunity where no binding precedent found that challenged conduct violated Free Exercise Clause).

The Second Circuit eventually held in *Kravitz* that "a prisoner claiming a violation of the right to the free exercise of religion under § 1983 need not make a showing of a substantial burden," 87 F.4th at 122, thereby opening the door to free exercise claims based on a handful or perhaps even one missed religious service, if there is no legitimate penological interest justifying the deprivation, *see id.* at 128-130 (reversing grant of summary judgment for defendants where plaintiff missed two religious services). But that decision, which was issued seven months after the April 14, 2023 deprivation here, "could not have given fair notice" to Defendants that

missing one service could constitute a free exercise violation "because a reasonable officer is not required to foresee judicial decisions that do not yet exist." *Kisela*, 584 U.S. at 107.

The Court appreciates, without deciding, that Plaintiffs might well have stated a free exercise claim under this Circuit's current jurisprudence. But where Defendants did not have notice of the right at the time of the alleged violation – and their conduct did not run afoul of the body of caselaw in existence at the time of the deprivation – qualified immunity shields them from liability. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) ("[T]he focus [of qualified immunity] is on whether the officer had fair notice that her conduct was unlawful."); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before [officers] are subjected to suit, [they] are on notice their conduct is unlawful.").

Accordingly, Defendants are entitled to qualified immunity on Plaintiffs' free exercise claims and those claims must be dismissed.

### B.  RLUIPA

Plaintiffs' RLUIPA claims also fall victim to the substantial burden test. RLUIPA provides, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

"For the required showing of a substantial burden under RLUIPA, [Plaintiffs] must demonstrate that the government's action pressured [them] to commit an act forbidden by [their] religion or prevented [them] from engaging in conduct or having a religious experience mandated by [their] faith. Additionally, this interference must be more than an inconvenience;

11

the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Woodward v. Perez*, No. 12-CV-8671, 2014 WL 4276416, at *6 (S.D.N.Y. Aug. 29, 2014); *see Hosannah*, 2017 WL 3207966, at *13 ("A substantial burden on religious exercise exists when an inmate is required to choose between following the precepts of her religion and forfeiting benefits on the one hand, and abandoning one of the precepts of her religion on the other hand.").

Defendants argue that Plaintiffs' RLUIPA claims must be dismissed because missing one religious service does not amount to a substantial burden and, in any event, Plaintiffs only seek damages under RLUIPA, which does not provide for damages against state officials in either their individual or official capacities. (Ds' Mem. at 14.) Plaintiffs dispute the assertion that they are not seeking injunctive relief and argue that they have plausibly alleged a substantial burden. (HBA Opp. at 16-18; HB7 Opp. at 16-17.) Plaintiffs also ask the Court to reevaluate the availability of damages under RLUIPA. (HBA Opp. at 18; HB7 Opp. at 17.)

I agree with Defendants that Plaintiffs fail to state a RLUIPA claim because, for the same reasons set forth in my discussion of Plaintiffs' free exercise claims, I find that Plaintiffs have not plausibly alleged a substantial burden. *See Hankins v. NYS Dep't of Corr. Servs.*, No. 07-CV-408, 2008 WL 2019655, at *6 (N.D.N.Y. Mar. 10, 2008) ("Courts have found that causing a prisoner to miss one religious service does not constitute a violation of RLUIPA."); *Powell v. City of N.Y.*, No. 14-CV-9937, 2016 WL 4159897, at *7 (S.D.N.Y. July 14, 2016) ("[E]vidence that a plaintiff was unable to attend two Jummah services does not make out a claim for violation of RLUIPA."), *report and recommendation adopted,* 2016 WL 4147203 (S.D.N.Y. Aug. 3, 2016).

Accordingly, Plaintiffs' RLUIPA claims must be dismissed, and I need not address the parties' argument relating to the availability of damages.[7]

## C.  **Equal Protection**

"To prove a violation of the Equal Protection Clause, . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination," *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005), "directed at an identifiable or suspect class," *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).  "He also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests." *Phillips*, 408 F.3d at 129; *see Williamson v. Maciol*, 839 F. App'x 633, 636 n.2 (2d Cir. 2021) (summary order) ("[T]he Supreme Court has created a lower level of scrutiny in determining the constitutionality of prison rules, generally requiring only that prison action be reasonably related to a legitimate penological interest.").

Discriminatory intent "implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable

---

[7] Plaintiffs assert in their opposition briefs, although not in their complaints, that they are seeking injunctive relief with respect to their RLUIPA claims.  (*See* HBA Opp. at 18; HB7 Opp. at 17.)  Although, in light of Plaintiffs' *pro se* status, I have discretion to consider this new request, *see Ross v. Cavalry Portfolio Servs., LLC*, 701 F. Supp. 3d 211, 222-23 (E.D.N.Y. 2023) ("Though a *pro se* plaintiff may not raise entirely new causes of action for the first time in her opposition papers, the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint."), *aff'd*, No. 23-7861, 2024 WL 4404043 (2d Cir. Oct. 4, 2024), "Plaintiffs cannot maintain claims for . . . injunctive relief where the underlying substantive claim has been dismissed." *Animal Welfare Inst. v. Romero*, 718 F. Supp. 3d 252, 267-68 (E.D.N.Y. 2024); *see Springfield Hosp. v. Hofmann*, No. 09-CV-254, 2011 WL 3421528, at *4 (D. Vt. Aug. 4, 2011), *aff'd*, 488 F. App'x 534 (2d Cir. 2012).  Accordingly, to the extent Plaintiffs assert claims for injunctive relief under RLUIPA, those claims must be dismissed.

group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *see Guan N. v. NYC Dep't of Educ.*, No. 11-CV-4299, 2014 WL 1275487, at \*16 (S.D.N.Y. Mar. 24, 2014).  "Actions having foreseeable and anticipated disparate impact are relevant evidence to prove the ultimate fact, forbidden purpose," but "disparate impact and foreseeable consequences, without more, do not establish a constitutional violation."  *Columbus Bd. of Ed. v. Penick*, 443 U.S. 449, 464 (1979).

Plaintiffs do not allege any facts from which I can conclude that Defendants prevented them from attending Jumah because of their religion.  Plaintiffs argue that "[t]he other white religious groups" – Seventh Day Adventists, Jews, Quakers, and Catholics – "are not treated like [M]uslims, Nation of Islam, and Rastafarians," (HBA Opp. at 19; HB7 Opp. at 18), but they do not allege, either in their complaints or opposition briefs, that inmates housed in either Housing Block A or Housing Block 7 who practice those religions were permitted to attend religious services on April 14, 2023.  Without more, this threadbare assertion of differential treatment is insufficient to state an equal protection claim.  *See Thomas v. Pingotti*, No. 17-CV-300, 2017 WL 3913018, at \*7 (N.D.N.Y. Sept. 6, 2017) (equal protection claim dismissed where plaintiff "merely ma[de] the conclusory assertion that inmates of other races, religions, and gender were treated differently by defendants (or would be treated differently if they found themselves in similar circumstances)"); *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012) (equal protection claim dismissed where "totality of Plaintiff's allegations regarding his . . . claim [was] a conclusory assertion, without any detail, that Defendant differed in its treatment to other similarly situated property owners").

Plaintiffs allege in their complaints that Muslims in Housing Blocks B and 5 were permitted to attend Jumah services on April 14, 2023, (*see, e.g., Brown* SAC ¶ 19; *Roque* TAC at 5), but prison housing blocks are not a suspect class.  *Cf. Keles v. Davalos*, 642 F. Supp. 3d 339,

365 (E.D.N.Y. 2022) ("Generally speaking, . . . to state a claim for a violation of the Fourteenth Amendment's Equal Protection Clause, the plaintiff must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender."); *Dubarry v. Annucci*, No. 21-CV-5487, 2022 WL 4485359, at *9 (S.D.N.Y. Sept. 27, 2022) ("It is well settled that prisoners either in the aggregate or specified by offense are not a suspect class."). Accordingly, Plaintiffs cannot maintain an equal protection claim based on differential treatment with prisoners in other housing blocks.[8]

Because plausibly pleading discriminatory purpose requires "sufficient factual matters to show that the Defendants adopted and implemented the challenged policy at least in part because of, not merely in spite of, its adverse effects upon an identifiable group," *Dava v. City of N.Y.*, No. 15-CV-8575, 2016 WL 4532203, at *8 (S.D.N.Y. Aug. 29, 2016), and because Plaintiffs have failed to provide facts plausibly suggesting that Defendants instituted the holiday schedule or denied Plaintiffs Jumah services because of, rather than in spite of, the adverse impact of those decisions on Muslim inmates, Plaintiffs' equal protection claims must be dismissed.

### D. Declaratory Relief

Finally, in a claim asserted against Defendant Annucci in his official capacity, Plaintiffs seek a declaratory judgment that he "failed to take action to curb known patterns of denying free exercise of prisoners' religion [and] violated the plaintiffs rights under the First . . . and Fourteenth Amendment[s] to the United States Constitution, and [RLUIPA]."[9]  (*Brown* SAC at 10.)

---

[8] Moreover, that some Muslim inmates were able to attend their Jumah services undercuts any suggestion that intentional religious discrimination was at work.

[9] Plaintiffs also seek a declaration that Annucci violated the Fifth Amendment, (*see, e.g.*, *Brown* SAC at 10), but there are no facts in the complaints which give rise to a Fifth Amendment violation and Plaintiffs do not otherwise assert that Annucci violated the Fifth Amendment.

"A request for relief in the form of a declaratory judgment does not constitute an independent cause of action." *Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 474 (S.D.N.Y. 2021). "[I]t is a request for a remedy that does not exist independent of a plausible underlying claim for relief," *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020), and as such, "Plaintiffs cannot maintain claims for declaratory . . . relief where the underlying substantive claim has been dismissed," *Animal Welfare Inst.*, 718 F. Supp. 3d at 268. In light of the Court's dismissal of Plaintiffs' RLUIPA and Equal Protection claims for failure to state a claim, as discussed above, Plaintiffs are not entitled to declaratory relief as to those claims.

As to Plaintiffs' free exercise claims, "qualified immunity does not bar actions for declaratory . . . relief." *Sudler v. City of N.Y.*, 689 F.3d 159, 177 (2d Cir. 2012); *see Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 76 (E.D.N.Y. 2018); *Dixon v. Santiago*, No. 15-CV-1575, 2015 WL 9582729, at *3 (D. Conn. Dec. 30, 2015). But Plaintiffs' requests for declaratory relief with respect to their free exercise claims are nonetheless improper because "the Eleventh Amendment bars federal courts from issuing retrospective declaratory relief against state officials for past violations of federal law." *Chan v. Campanelli*, No. 24-CV-8110, 2024 WL 5120014, at *1 (E.D.N.Y. Dec. 16, 2024); *see Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 236 (S.D.N.Y. 2013), *aff'd*, 779 F.3d 97 (2d Cir. 2015).[10]

Accordingly, Plaintiffs requests for declaratory relief must be dismissed.

## IV.    LEAVE TO AMEND

Finally, I consider whether Plaintiffs should be granted leave to amend, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound

---

[10] Further, Plaintiffs provide no facts about the alleged "patterns of denying free exercise" or Annucci's alleged knowledge thereof.

discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have all amended their complaints at least once, with most amending two or three times, and they were offered the opportunity to amend one final time after having the benefit of Defendants' pre-motion letter outlining the proposed grounds for dismissal, (*Brown* Dkt. No. 38). Thereafter, the HB7 Plaintiffs amended their complaints, but the HBA Plaintiffs declined to do so. Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970, at *7-8 (S.D.N.Y. Mar. 3, 2010) (leave to amend properly denied where plaintiff declines to amend after being advised of arguments for dismissal and complaint's deficiencies), *aff'd*, 440 F. App'x 7 (2d Cir. 2011); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the

defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies."); *Elmore v. Atieh*, No. 23-CV-508, 2024 WL 770768, at *2 (N.D.N.Y. Feb. 26, 2024) (denying leave to amend because "the extension of special solicitude to *pro se* litigants requires only *one* . . . opportunity to amend" and plaintiff "failed to cure the defects despite having been given an adequate notice of them and a reasonable opportunity to cure them") (emphasis in original); *see also Solomon v. Fordham Univ. Admin., Rose Hill Campus*, No. 22-887, 2023 WL 5689712, at *3 (2d Cir. Sept. 5, 2023) (summary order) (leave to amend properly denied where *pro se* plaintiff was permitted to amend at least three times and did not persuasively argue why a fourth amendment should be permitted); *Pottetti v. Educ. Credit Mgmt. Corp.*, No. 19-CV-4479, 2020 WL 5645194, at *7 (E.D.N.Y. Sept. 22, 2020) (no need to grant leave to amend where *pro se* plaintiff "has had multiple opportunities to properly state his claims").

Further, Plaintiffs have not asked to amend or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this ruling. *See Bank v. Gohealth, LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err

in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2022 WL 4364600, at *4 n.3 (S.D.N.Y. Sept. 21, 2022) (denying leave to amend where *pro se* plaintiff did not provide additional facts to cure identified deficiencies); *see also Todd v. Fields*, No. 20-CV-3608, 2022 WL 596829, at *6 (S.D.N.Y. Feb. 25, 2022) ("While courts should be more lenient when considering a *pro se* party's motion to amend than when considering that of a represented party, leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim.").

      Accordingly, I decline to grant leave to amend *sua sponte*.

## V.    <u>CONCLUSION</u>

      For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to: 1) docket this order in this case and the seventeen related cases listed below the caption; 2) terminate the pending motion, (*Brown* Dkt. No. 53); 3) close this case and the seventeen related cases; and 4) send this Opinion & Order, including the attachment, to the Plaintiff in this case and each of the seventeen related cases.

**SO ORDERED.**

Dated: February 6, 2025
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.